## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ENVIRONMENTAL DEFENSE FUND,
257 Park Ave. S.
New York, NY 10010,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
ENERGY,
1000 Independence Ave. SW
Washington, DC 20585

      Defendant.

Civil Action No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     In this lawsuit under the Freedom of Information Act (FOIA), Environmental

Defense Fund (EDF) seeks records of the U.S. Department of Energy (DOE) on a time-sensitive

matter of extraordinary public importance: DOE's secretive formation of an advisory committee

and development of a deeply flawed report, drafted in secret, to purportedly support a major

policy reversal. The U.S. Environmental Protection Agency (EPA) is relying on the report in its

attempt to rescind the "Endangerment Finding," a longstanding determination that greenhouse

gases (GHGs) in the atmosphere threaten the public health and welfare of current and future

generations, and that emissions from motor vehicles contribute to the GHG pollution that

threatens public health and welfare. The Finding is grounded in extensive scientific evidence, is

foundational to efforts to reduce GHG pollution, and has been repeatedly affirmed by the courts

and EPA.

2.      In particular, this suit seeks records regarding DOE's creation of a Climate Working Group (CWG) of climate skeptics, the meetings and work of that group, and the group's development of a report out of public view. The group secretly developed and transmitted to EPA a report that questions the scientific consensus on climate change and has been condemned by many in the scientific community.

3.      On July 29, 2025, DOE issued the Climate Working Group's report, which was the first time the group or the report had been disclosed to the public. That same day, EPA issued a proposed rule to rescind the Endangerment Finding and all light-, medium-, and heavy-duty vehicle and engine greenhouse gas emission standards—and the proposal cited the CWG report 22 times.

4.      On August 1, 2025, Plaintiff EDF submitted two FOIA requests to DOE, seeking to bring greater transparency regarding the formation and activities of the CWG, including the development of the CWG's Report. DOE failed to produce records or make determinations on EDF's request by the statutory deadline, violating EDF's rights under FOIA and depriving the public of vital records of clear and immediate public interest. The swift release of requested records regarding DOE's creation of the Climate Working Group, agency directives to and communications with the CWG, and the CWG's development of the Report is critical to the public understanding and evaluation of DOE and EPA's efforts to undermine federal leadership to address climate harms, including to rescind the Endangerment Finding.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to FOIA, which vests jurisdiction in the U.S. District Court for the District of Columbia. 5 U.S.C. § 552(a)(4)(B). This

Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, a federal statute.

6.    This court may provide injunctive and declaratory relief under 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 2201 *et seq.*, and the Court's inherent authority to enjoin federal officials from acting unlawfully.

7.    Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

8.    Plaintiff EDF is a 501(c)(3) non-profit environmental organization dedicated to finding practical solutions to environmental problems through the use of law, policy, science, and economics. EDF has offices throughout the United States, including in the District of Columbia.

9.    EDF engages in extensive, daily efforts to inform the public about matters affecting public health, environmental and energy policy, as well as about climate change science and the human health impacts of pollution. EDF has long advocated for measures to protect people and communities from the harmful effects of air pollution and climate change. EDF advocated for and supported EPA's Endangerment Finding concluding that greenhouse gas emissions endanger human health and welfare, and supported protective EPA standards to reduce air and climate pollution from sources such as power plants, cars and trucks, and oil and gas operations. EDF has multiple channels for distributing information to the public, including through direct communication with its more than three million members and supporters, press releases, blog posts, reports and analyses, scientific studies, and engagement on social media. EDF is frequently called upon to share its expertise on important public health and environmental issues in the popular media and in other public forums.

10.     Defendant Department of Energy (DOE) is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is subject to FOIA. DOE has possession and control of the requested records and is responsible for fulfilling the FOIA requests.

## LEGAL BACKGROUND

11.     FOIA requires a federal agency to make public records "promptly available"—subject to enumerated exemptions—to any person who makes a request that reasonably describes the records sought and complies with the agency's rules for making the request. 5 U.S.C. § 552(a)(3)(A).

12.     FOIA requires an agency in receipt of a FOIA request to issue a determination on the request within 20 working days from the date of receipt. 5 U.S.C. § 552(a)(6)(A)(i).

13.     The agency's determination on a FOIA request shall contain (1) the agency's determination of whether to comply with the request and provide responsive records, (2) the reasons for the agency's determination, and (3) notice of the right of the requester to appeal an adverse determination to the head of the agency. *Id.*

14.     Mere notice of the agency's receipt of the request does not suffice for a "determination," nor is it enough that "within the relevant time period, the agency simply decide to later decide." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013). Instead, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*

15.     A FOIA requester may seek "expedited processing" of a request for records, and a determination on a request for expedited processing must be made, and notice of that

determination provided to the requester, within 10 days of the date of the request. 5 U.S.C.

§ 552(a)(6)(E)(ii).

16.     If the agency fails to comply with FOIA's statutory deadline for issuing a

determination on a request, the requester is deemed to have exhausted its administrative remedies

and may file suit against the agency. *Id.* § 552(a)(6)(C)(i).

17.     An agency shall not charge a requestor or shall reduce established fees and costs

incurred in responding to a FOIA request "if disclosure of the information is in the public interest

because it is likely to contribute significantly to public understanding of the operation or

activities of the government and is not primarily in the commercial interest of the requester." *Id.*

§ 552(a)(4)(A)(iii).

18.     The agency bears the burden to prove the legality of its actions under FOIA.

5 U.S.C. § 552(a)(4)(B).

19.     FOIA grants jurisdiction to the court "to enjoin the agency from withholding

agency records and to order the production of any agency records improperly withheld from the

complainant." *Id*.

## FACTUAL BACKGROUND

**A.  EPA's Endangerment Finding and Actions by the Current Administration to
     Undermine and Rescind the Finding via the "Climate Working Group"**

20.     In 2009, EPA made two vital findings: first, that six GHGs in the atmosphere,

including carbon dioxide and methane, threaten the public health and welfare of current and

future generations; and second, that the combined emissions of these GHGs from motor vehicles

contribute to the GHG pollution that threatens public health and welfare. *See* Endangerment and

Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act,

74 Fed. Reg. 66,496 (Dec. 15, 2009), https://perma.cc/CRG9-EB2A. Together, these findings are referred to as the "Endangerment Finding."

21.     EPA adopted the Endangerment Finding after significant public process, including multiple opportunities for the public to give input and EPA's evaluation of more than 380,000 public comments. The Endangerment Finding is based on extensive scientific evidence that climate pollution poses a grave threat to human health and welfare. That scientific evidence has only become stronger in the more than 15 years since the Endangerment Finding was adopted, with experts confirming that climate change resulting from GHG emissions is causing extensive, and increasingly severe, harms throughout the country. *See* Letter from P. Zalzal et al., EDF, to Hon. Lee Zeldin, EPA, at 5‑9 (Feb. 18, 2025), https://tinyurl.com/EDFLetter021825.

22.     Parties have filed legal challenges to the Endangerment Finding in the past, but—given the extensive evidence supporting the Endangerment Finding—EPA and the courts have uniformly rejected those efforts. *See, e.g.*, *Coal. for Responsible Regulation v. EPA*, 684 F.3d 102, 116126 (D.C. Cir. 2012) (rejecting challenges to the Endangerment Finding on multiple grounds), *rev'd in part on other grounds sub nom. Util. Air Reg. Grp. v. EPA*, 573 U.S. 302 (2014); Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act; Final Action on Petitions, 87 Fed. Reg. 25,412 (Apr. 29, 2022); EPA's Denial of the Petitions to Reconsider the Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 75 Fed. Reg. 49,556 (Aug. 13, 2010).

23.     By contrast, DOE does not have a deep history of developing scientific analysis regarding the impacts humans and the environment associated with greenhouse gas emissions.

24.     In an Executive Order issued January 20, 2025, the President directed the EPA Administrator to work with other agency heads to submit to the White House recommendations on the "legality and continuing applicability" of the Finding. Exec. Order 14154, *Unleashing American Energy*, § 6(f) (Jan. 20, 2025).

25.     On March 12, 2025, EPA Administrator Zeldin, with support from Secretary of Energy Chris Wright, announced that the agency would formally reconsider the Endangerment Finding. EPA Press Office, *Trump EPA Kicks Off Formal Reconsideration of Endangerment Finding with Agency Partners*, EPA (Mar. 12, 2025), https://perma.cc/6W9N-ZHUN.

26.     Because the overwhelming scientific consensus—and the federal government's own expert analyses and reports—demonstrate the lack of any scientific basis to reconsider the Endangerment Finding, the Administration took steps to manufacture a purported basis upon which the Administration could rely.

27.     In March 2025, Secretary of Energy Chris Wright secretly devised a plan to convene a "Climate Working Group" ("CWG") of individuals from outside the government. *See* U.S. Dept. of Energy Climate Working Group, Report: *A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate* at x (July 2025), https://perma.cc/2H32-MVCY. ("CWG Report"); Travis Fisher, *Why I Helped Organize the Department of Energy's Climate Report*, CATO at Liberty (Aug. 6, 2025, 10:25 AM), https://perma.cc/CQ87-WCYF.

28.     The express purpose of the group was to issue a report that would "challenge the mainstream consensus." CWG Report at x. The existence and work of the group was not publicly disclosed until July 29, 2025, the same day that EPA released its notice of proposed rulemaking to rescind the Endangerment Finding.

29.    The five members of the CWG are Drs. John Christy, Judith Curry, Steven

Koonin, Ross McKitrick, and Roy Spencer. All five have a history of questioning the impacts of

human-caused greenhouse gas emissions on climate change, and asserting that leading scientific

assessments have overstated the impacts of climate change on human health and welfare and that

the costs of climate change mitigation exceed the benefits.[1]

30.    By April 2025, DOE had assembled the CWG and it began working in secret on

its report.

31.    On May 27, 2025, the CWG submitted its report to Secretary Wright, and the

report was contemporaneously sent to EPA. According to Curry, although the group completed

the CWG Report in May, its publication "was delayed to coincide with the release of EPA's

proposal" to rescind the Endangerment Finding. Benjamin Storrow, *How Chris Wright Recruited

a Team to Upend Climate Science*, E&E News (Aug. 11, 2025), https://perma.cc/TNJ5-J4M4.

32.    On July 29, 2025, DOE published the CWG Report, titled *A Critical Review of

Impacts of Greenhouse Gas Emissions on the U.S. Climate*.

33.    In the CWG Report, the authors assert that DOE commissioned the report to

advise the federal government on "climate science relevant for energy policymaking." CWG

Report at x. The report is replete with advice aimed at policymakers, such as that the economic

effects of carbon-dioxide-induced warming "are too small to justify aggressive abatement policy

and that trying to 'stop' or cap global warming . . . would be worse than doing nothing." *Id.* at

116.

---

[1] *See, e.g.,* Maxine Joselow, *Trump Hires Scientists Who Doubt the Consensus on Climate Change*, N.Y. Times (July 8, 2025), https://perma.cc/3VJX-6UR4; Naomi Oreskes et al., *That 'Obama Scientist' Climate Skeptic You've Been Hearing About . . .* , Scientific American (June 1, 2021), https://perma.cc/FQA9-NX78 (stating that Koonin published a book on climate change that was widely condemned for promoting climate denial, "cherry-pick[ing] and misrepresent[ing] outdated material to downplay the seriousness of the climate crisis").

34.    The CWG Report also advises broadly that global warming is on balance more beneficial than harmful, that cold temperatures are the greater threat, and that extreme weather events are no worse than they have been historically.

35.    On July 29, 2025, EPA issued a notice of proposed rulemaking to rescind the Endangerment Finding and all light-, medium-, and heavy-duty vehicle and engine greenhouse gas emission standards. U.S. EPA, Proposed Rule: *Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards*, 90 Fed. Reg. 36,288 (Aug. 1, 2025).

36.    In the proposed rule's Executive Summary, EPA states that it "reviewed and relied upon" the CWG Report "in formulating" its proposal. *See* 90 Fed. Reg. at 36,292. The proposed rule further states that the EPA Administrator personally "received and evaluated the draft report submitted by the U.S. Department of Energy (DOE) Climate Working Group (CWG)." *Id.*

37.    EPA relies on the CWG Report extensively throughout the proposed rule, including for each of the central assertions in the proposed rule's "Climate Science Discussion," 90 Fed. Reg. at 36,307–10, and cites the report a total of 22 times.

38.    Comments on EPA's proposed rulemaking are due on September 22, 2025. U.S. EPA, *Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards; Extension of Comment Period*, 90 Fed. Reg. 39,345 (Aug. 15, 2025).

39.    The government recently stated that "the CWG was formally dissolved by Secretary [of Energy] Wright on September 3, 2025." Defendant's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, or in the Alternative, for Summary Judgment or Consolidation Under Rule 65(A)(2) at 4, ECF No. 43, *Envtl. Defense Fund v. Wright et al.*, Case No. 1:25-cv-12249-WGY (D. Mass., filed Sept. 4, 2025).

**B. FOIA Request to DOE Seeking Records Regarding the Formation and Activities of the Climate Working Group (HQ-2025-03875-F)**

40.     On August 1, 2025, EDF submitted a FOIA request to DOE seeking the following records:

> a.   All records related to the decision to form the Climate Working Group.
>
> b.   The Climate Working Group charter and all records related to the development of that charter.
>
> c.   A list of all members of the Climate Working Group and all records related to decisions regarding the composition or membership of that group, including any criteria that are identified regarding the makeup of the group.
>
> d.   All records regarding the dates of meetings of the Climate Working Group.
>
> e.   All agendas, minutes, and meeting transcripts from Climate Working Group meetings.
>
> f.   All documents made available or used at Climate Working Group meetings.
>
> g.   All reports and recommendations made by the Climate Working Group, including any drafts of such reports or recommendations.
>
> h.   All comments or other feedback provided to the Climate Working Group.

EDF requested all records produced, modified, or transmitted from January 20, 2025 through the date that DOE begins searching for responsive records. Ex. A at 1-2 (Letter from Erin Murphy, EDF, to DOE Freedom of Information Officer (Aug. 1, 2025)) (the "CWG Formation Request").

41.     Because the documents and communications requested were highly relevant to the CWG's own report, on which public comments were due September 2, 2025, and to an EPA proposed rule with comments due in September 2025, and due to EDF's strong interest in understanding and publicly sharing records of correspondence concerning climate science and air pollution, EDF requested expedited processing of the CWG Formation Request. *Id.* at 2-5.

42.     EDF also requested a fee waiver for any fees and costs associated with the CWG Formation Request given its role as a non-profit organization that disseminates information that is broadly in the public interest. *Id.* at 5-6.

43.     On August 1, 2025, EDF received an automated receipt showing that it had successfully submitted the CWG Request. Ex B (FOIA.gov Submission Receipt (Aug. 1, 2025)).

44.     On August 7, 2025, EDF received an "interim letter" denying EDF's request for expedited processing of the CWG Request. Ex.C (Email from Jason Taylor, DOE, to Erin Murphy, EDF (Aug. 7, 2025); Ex. D (Letter from Todd Burns, DOE FOIA Officer, to Erin Murphy, EDF (Aug. 6, 2025)).

45.     The interim letter did not contain any additional information about DOE's intended response to the CWG Formation Request. It did not include any information relating to the scope of the agency's response, nor did it include any information about the agency's timeline for a response. Ex. D.

46.     As of August 29, 2025, 20 working days after DOE received the CWG Formation Request, EDF had not received any documents or a determination. In fact, EDF had not received any additional information concerning the status of the CWG Formation Request at all.

47.     On September 9, 2025, EDF sought additional information from DOE concerning the Department's timeline for providing EDF with a determination and documents responsive to the CWG Request. Ex. E (Email from Erin Murphy, EDF, to Jason Taylor, DOE (Sep. 9, 2025)).

48.     On September 10, 2025, DOE responded to EDF, stating only that the Department was still reviewing the CWG Formation Request. Ex. F (Email from Jason Taylor, DOE, to Erin Murphy, EDF (Sep. 10, 2025)).

49.     To date, DOE has not provided EDF any documents or a determination on the CWG Formation Request, nor has DOE provided EDF with a timeline for completing its search for responsive documents.

50.     The documents and communications sought in the CWG Formation Request concern the creation of the Climate Working Group's report, which seeks to fundamentally change the government's views on greenhouse gas emissions. The report has already been relied upon by another federal agency in a proposed rulemaking.

51.     DOE's failure to respond to the CWG Formation Request within the required timeframe has prevented EDF, its members, and the general public from being fully informed about the scope of the CWG's process in drafting the report, and thus prevented meaningful engagement on this important issue. Failure to respond could prevent EDF from being able to comprehensively address EPA's reliance on the Climate Working Group and the CWG Report in public comments on EPA's proposed rule, which are due September 22, 2025.

**C. FOIA Request to DOE Seeking Records Regarding the Climate Working Group Report (HQ-2025-03874-F)**

52.     Also on August 1, 2025, EDF submitted a FOIA request to DOE seeking the following records:

a.  All records related to the formation of the 2025 Climate Working Group and/or related to decisions regarding the composition or membership of that group.

b.  All records in DOE's possession related to meetings of the 2025 Climate Working Group, including calendar entries, lists of meeting invitees or participants, meeting agendas, meeting notes, and other materials.

c.  All records related to the development of the report titled "A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate," including all drafts of the report (whether having the same or different titles); calendar entries; meeting notes; all research, data, and projections done for the report; and any other records underlying the report or the conclusions contained within the report.

    d.  All records produced, modified, or transmitted that are related to the schedules of below-identified transition team members and political appointees, including: calendars, schedules, itineraries, logs of daily activities and travel (including motor pool logs, if applicable), and records of in-person, telephonic, or videoconference meetings, including lists of meeting attendees and the affiliation of each attendee, if identified, related to meetings of the 2025 Climate Working Group or development of the report titled "A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate" and all of its prior drafts.

    e.  All records of the "internal review" of the report (A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate) that was reportedly conducted by "eight scientists/administrators employed by the DOE."

    f.  The following correspondence:

        i.  All correspondence with and/or between any members of the Trump Administration's DOE transition team and/or any Trump Administration DOE political appointees, including U.S. DOGE Service employees working at or with DOE —that (1) involve the Working Group members … or (2) contain any of the search terms listed … including any briefing materials, memos, presentations or other documents created by and/or shared with/among DOE transition team and/or political appointees….

To facilitate DOE's search of responsive correspondence relevant to item (f) above, EDF identified 66 political appointees, transition team members, and U.S. DOGE Service employees working at or with DOE; five working group members; and seven limiting search terms. Ex. G at 2-4 (Letter from Erin Murphy, EDF to DOE Freedom of Information Officer (Aug. 1, 2025)) (the "CWG Report Request").

    53.  Because the documents and communications requested were highly relevant to the CWG's own report, on which public comments were due September 2, 2025, an EPA proposed rule with comments due in September 2025, and due to EDF's strong interest in understanding and publicly sharing records of correspondence concerning climate science and air pollution, EDF requested expedited processing of the CWG Report Request. *Id.* at 5-7.

54.     EDF also requested a fee waiver for any fees and costs associated with the CWG Report Request given its role as a non-partisan, non-profit organization that disseminates information that is broadly in the public interest. *Id.* at 7-9.

55.     On August 1, 2025, EDF received an automated receipt showing that it had successfully submitted the CWG Report Request. Ex. H (FOIA.gov Submission Receipt (Aug. 1, 2025)).

56.     On August 7, 2025, EDF received an "interim letter" denying EDF's request for expedited processing of the CWG Report Request. Ex I (Email from Jason Taylor, DOE to Erin Murphy, EDF (Aug. 7, 2025); Ex. J (Letter from Todd Burns, DOE FOIA Officer, to Erin Murphy, EDF (Aug. 6, 2025)).

57.     The interim letter did not contain any additional information about DOE's intended response to the CWG Report Request. It did not include any information relating to the scope of the agency's response, nor did it include any information about the agency's timeline for a response.

58.     As of August 29, 2025, 20 working days after DOE received the CWG Report Request, EDF had not received any documents or a determination on the CWG Report Request. In fact, EDF had not received any additional information concerning the status of the CWG Report Request at all.

59.     On September 9, 2025, EDF sought additional information from DOE concerning the Department's timeline for providing EDF with a determination and documents responsive to the CWG Report Request. Ex. E.

60.     On September 10, 2025, DOE responded to EDF, stating only that the Department was still reviewing the CWG Report Request. Ex. F.

61.    To date, DOE has not provided EDF any documents or a determination on the CWG Report Request, nor has DOE provided EDF with a timeline for completing its search for responsive documents.

62.    The documents and communications sought in the CWG Report Request concern the creation of the Climate Working Group's report, which seeks to fundamentally change the government's views on greenhouse gas emissions. The report has already been relied upon by another federal agency in a proposed rulemaking.

63.    DOE's failure to respond to the CWG Report Request within the required timeframe has prevented EDF, its members, and the general public from being fully informed about the scope of the CWG's process in drafting the report, and from being able to meaningfully engage on this important issue. Failure to respond could prevent EDF from being able to comprehensively address EPA's reliance on the Climate Working Group and the CWG Report in public comments on EPA's proposed rule, which are due September 22, 2025.

## CAUSES OF ACTION

## COUNT I

### (Violation of the Freedom of Information Act, 5 U.S.C. § 552)

1.    Plaintiff incorporates by reference all preceding paragraphs.

2.    Under FOIA, Defendant was required to respond to the CWG Formation Request and the CWG Report Request and to notify Plaintiff of its determinations within 20 working days of receiving the requests. 5 U.S.C. § 552(a)(6)(A).

3.    Under FOIA, Defendant was also required to timely produce all non-exempt records responsive to both the CWG Formation Request and the CWG Report Request. 5 U.S.C. § 552(a)(3).

4.     By failing to respond to Plaintiff's requests within the statutorily mandated timeframe and to produce response records, Defendant has violated FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, to take reasonable steps to release all reasonably segregable nonexempt information, and to not withhold responsive records. 5 U.S.C. § 552 et seq.

5.     Plaintiff is harmed by Defendant's violation of FOIA and will continue to be harmed until Defendant is compelled to comply with its obligations under FOIA.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court::

A.  Declare unlawful DOE's failure to provide EDF with a statutorily-required determination on the CWG Formation Request and CWG Report Request within FOIA's deadlines;

B.  Declare unlawful DOE's failure to make the requested records promptly available to EDF;

C.  Order DOE to provide EDF with all responsive records to both the CWG Formation Request and the CWG Report Request immediately, at no charge to EDF, and in unredacted form unless an exemption is applicable and properly asserted;

D.  Order DOE to provide a *Vaughn* index of any responsive records or portions of records withheld under the claim of a FOIA exemption;

E.  Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable law; and

F.  Grant any further relief as the Court deems just and proper.

Respectfully submitted on September 11, 2025.

/s/ Lynn Eisenberg
Daniel F. Jacobson (D.C. Bar 1016621)
Lynn D. Eisenberg (D.C. Bar 1017511)
John Robinson (D.C. Bar 1735989)
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington DC, 20006
(301) 823-1148
dan@jacobsonlawyersgroup.com


/s/ Erin Murphy
ERIN MURPHY (Bar ID D00532)*
Environmental Defense Fund
555 12th St. NW, Suite 400
Washington, D.C. 20004
Telephone: (202) 572-3525
E-mail: emurphy@edf.org
*Practicing pursuant to D.C. Ct. App. Rule 49(c)(3)

Counsel for Environmental Defense Fund
Fund